Good morning, Your Honors. Michael Reese on behalf of the appellant. May it please the Court, Counsel. This appeal seeks reversal of the lower court's order dismissing the case of prejudice. The lower court ruled that way based upon its preemption analysis. The lower court erred, and there is a recent Ninth Circuit case directing on point in which Judge Wardlaw sat on the panel. And that's the Aguero v. U.S. Bank case, which came out this summer. It was submitted as recent authority in a 28-J letter. I don't know if Your Honors had it before you or not. But in that particular instance, the court rejected the analysis that was performed by the district court in this case. To get into the specifics, the judge in our case applied the HOLA, the Home Owners' Loan Act, and Office of Thrift Supervision analysis in determining that this case was preempted. This case involves the National Bank Act and the OCC's application of that act. And in the Aguero case, and that's the Aguero v. U.S. Bank 653 F3rd 912, this court specifically rejected that analysis. The reason is the HOLA is a very broad law, and it encompasses field preemption. The National Bank Act, which is the law at application here, it's much more narrow. And the Ninth Circuit in the Aguero case saw that distinction and, in fact, relied upon the district court cases in which we relied upon at the lower court level but were rejected by the district court here. Now, do you agree that before we analyze whether the state laws are of general applicability, we have to first determine whether they affect one of the deposit-taking powers under 12 CFR section 7.4007b2? Under Aguero, there's two steps that must be performed. The first step is whether or not this law falls into that general category. And then the second step is you have to look at the savings clause. And what happened in this particular case is the court said, well, under the HOLA application, you don't even get to that second step, and that was specifically rejected by this court in the Aguero case. The court said you have to take both steps, and if you don't take both steps, that's reversible error. And it's important here because there were two arguments made for preemption. The first argument, which pertained to the Expedited Funds Availability Act, also known as the EFAA, the court specifically rejected that preemption argument, saying those plans are not preempted because this case is based upon false and misleading statements. If the court had applied the same analysis with respect to the National Bank Act preemption arguments, it would have come to the same conclusion. And that's because the laws at issue here are laws of general applicability. They are consumer protection laws and common law claims that apply to all businesses. They don't target banks in any way whatsoever. They apply to shoe manufacturers, as well as banks, as well as manufacturers of food. So in some, this case is very simple. Following governing authority of the Ninth Circuit, which is the Aguero case, the Aguero versus the U.S. Bank matter, the district court erred as a matter of law, and it must be reversed. Did the district court have the benefit of Aguero? No, the Aguero did not. Your Honor, the court did not. The decision in this case before the court was rendered on June 22, 2010, the Aguero case came out on August 1 of 2011. But the Aguero case does follow the line of cases, the district court cases, that were cited in support of the argument against preemption, and that's specifically the Davis case and also the Guterres case. And the district court, in this particular matter, against Bank of America, rejected those cases, said the analysis applied there does not apply here. Instead, I'm going to follow the HOLA analysis, and that has been rejected. That was rejected by Guterres. It was rejected by Davis, and it has since become governing authority because it was rejected by the Ninth Circuit in the Aguero decision. Thank you. Thank you, Your Honor. Good morning, Your Honors. If it pleases the court and counsel, I'm also got a cold. I'm Lawrence Hutt, counsel for the Respondent. Green tea. I'll try that later. I do agree with counsel for the appellant in one respect. I think this is a relatively simple case, but, of course, I take the opposite position. Agueo was decided six months ago, and had there been briefing on it, I would have submitted a response to counsel's letter, but I will obviously respond now. Agueo stands for basically either two propositions or two parts of one proposition. And basically, it's a simple case in that it said, unlike, it distinguishes HOLA preemption from NBA National Bank Act preemption, although distinguishing the analyses does not mean you reach necessarily a different result, but there's a different process. That was one principle. And two, Agueo prescribes that the approach that a court should take is to look at the coverage clauses, if you will, B-2 of Regulation 7.4007. And then, if there's coverage, you look at what might be called the savings clause or the general applicability issue that counsel raises. Why is there coverage? The regulation doesn't deal with advertising. And isn't this complaint about false advertising? Your Honor, there is, to be sure, references in the complaint to alleged misrepresentations, alleged representations, et cetera. The problem here is that the moniker that's been placed on it of misrepresentation or representation just doesn't add up, and it doesn't connect as a matter of pleading to the wrongs that counsel is alleging. And there's two reasons for that. Number one, on their face, the representations that are alleged were correct, as is pleaded in the complaint. The way the program, the overdraft protection program worked is exactly as was stated. What is not correct is counsel's characterization of what was stated. The standard in California is that the statement can be technically true but still be misleading. And if it is misleading, then it would violate Section 17200. That's correct, but that's not the case. That's not the situation here. But that's not a question of preemption. I mean, you may be absolutely right, and there may be no basis for the complaint. I mean, you might get it dismissed at the time of a motion to dismiss or a summary judgment or somewhere, but that doesn't change the fact that if what he's alleging is false advertising, that it's not preempted. But, Your Honor, the alleged, the allegation, one of our consent, we made two basic arguments to the district court, as we did in our briefing in this Court. Number one, that the claims that appear to be made are preempted. And that is the ground on which the district court ruled. And number two, that there's no claim pleaded here under State law because the alleged, purported misrepresentations don't, aren't the cause of the harm that's alleged in the complaint. They don't connect. Can you elaborate on that argument? Yes. What is alleged here is that the plaintiff was purportedly induced to sign up for overdraft protection, but was not told that overdraft protection allegedly might affect the availability of his funds, such that a customer, two customers that are similarly situated, this is the allegation. One would have his funds available sooner, and one would have his funds available later, depending on whether they were or were not enrolled in overdraft protection. However, the information about when your funds would, in fact, definitely be available is given to the customer. There's no doubt about that. In other words, he is saying, you didn't tell me it might have an effect. And I'm saying, well, we do tell you as a customer, when you came into the branch and you deposited your check, we told you exactly when your deposit was going to be available. It wasn't a generality. It wasn't a general principle. So you told him when it was going to be available. I'm just trying to understand this. But is it that the, it was a bad check, so it turned out that it wasn't available on the day you told him. Is that it? No, no, Your Honor. Or the funds still were available because you covered the bad check with overdraft protection. The bank's general policy is, as is true, I think, of most banks, that customer deposits are available the next business day. If there's a deviation from that general policy, when customer X walks in the door and deposits a check, he is told that at the time. So when you leave the teller, having made your deposit, because this was done in person, when you leave the teller, if you were not told differently, it's in accordance with the general policy, which was the next business day. And that's the same whether you have this ODP or not, right? Correct. Correct. What you're saying is it's not a false representation. Yes. Okay. But that's not a preemption question. That's a question of whether the complaint accurately describes what happens. But they're saying it's a false representation. That's their claim. And you're saying, no, it's not. And I don't see why that makes this case preempted. Well, I think the second basis for saying that it doesn't state a claim under 1206. And what I'm saying is two things. Number one, the representations, although characterized by counsel as you purported to ensure, uses the word ensure, that something would happen, when you read those It saves certain fees. It is by no means unqualified. But even if it were. But isn't that a question that really either needs to be resolved in summary judgment or, assuming you're right, or go to a jury as to whether or not on these facts, given these representations, this was misleading. And I think the problem with that, the second argument, is that it's like the argument in Gerber. I'd like to come back to that in a moment. Because the causation piece is the piece that is missing. Well, the cause of this is that someone wrote him a bad check. Yes. Okay. So just so that we understand your argument in terms of you're saying he's using the words that there were deceptive practices or whatever. But you're saying his complaint is that you made funds available to him so that he could write checks on this and then all these other bad things happened. But the reason that all these bad things happened is because someone wrote him a bad check. Correct, Your Honor. That's exactly it. Several decisions. But if he had known that his overdraft protection wouldn't cover the bad check, then either the bank would have had to cover it, which is the case, right, if the bank accepts it? But that's not the allegation. The allegation is that, but for overdraft protection, it might have been available to him at a later time. And our point is there's no reason to get into mights and conjectures and what could have happened. We know what the policy is. Isn't it a question about who covers the bad check? The bank could lose out or the consumer can lose out. No. What happened here is he's contention, and it's very clear when one reads paragraphs 35 except of the complaint, that he's complaining that because he was enrolled in overdraft protection, his funds were made available to him sooner, might have been made available to him sooner than if he had not been covered by overdraft protection. And the point that one would take from that is, and the example he gives in the following paragraphs, everything is the same except in one case that there's a different funds availability. And it's been. He says that fees were charged. This is charged to his credit card, right? His overdraft protection was linked to his credit card. Yes. He elected that. And he has to pay fees for it. And he says this was not explained properly in the advertising. No, Your Honor. That's not the contention. In fact, it's highly significant that in 35 at SEC, there is no contention and no allegation that the fees he was charged were other than the fees that he understood would be charged if this scenario happened, the scenario being he deposited a bad check and drew the funds from the bad check. There is no allegation that the fees were mischarged or other than as represented. So you're just saying no matter what you call this, what it is is he's complaining about the deposit, the way the bank handles deposits. He's complaining that, yes. He's complaining about the way the bank handled deposits, and he's complaining that in the case of certain customers, the funds are available too early. And funds availability is squarely preempted in 7.4007B2. State law cannot restrict the bank's funds availability policy. The effect of his claim would be to do precisely that. It would take a group of customers and say, your funds have to be available later than we otherwise would have made them. Or bank, you have to make funds available for all customers later than your policy. But that's the field preemption argument. It's not a field preemption argument. It's an express preemption argument. Express. I'm sorry, express. Under the SEC regulations. So then if they're not expressly preempted, and we reach the second step, if let's say the panel didn't agree that they were expressly preempted. I'm just, I'm talking hypothetically here. And we reach the second step of the statutory framework. Are the claims conflict preempted? And what authority would you cite in that position? I think that the, there's really not, the argument here is express preemption. That it's express preemption because there was, there was a regulation that even under the Aguayo case, it's recognized that the OCC regulations are valid and do have preemptive effect. And it squarely says state law shall not, I'm paraphrasing, but will not impede or condition or impair national bank policies regarding funds availability. There's no way that the plaintiff can get relief here without impacting funds availability. And the problem with the misrepresentation. I don't understand. He says if he had been told the facts about what he would have to pay for this, the charges he had to pay, and what the other people have to pay, then he would have had full information and could have made an intelligent decision. But, Your Honor, that's not the allegation. Well, it is from what I read of it. The allegation is the fact that he wasn't told has nothing to do with the fees. The fact that he claims he was not told was that ODP, signing up for overdraft protection, might have an effect on his availability of funds. That is the contention. That's the allegation. Well, so really the allegation, while I'm looking at 36 and 45, is that people with overdraft protection are put at risk that it will be used to cover bad checks without being told that. So they're actually, he says, they're actually going to have less protection than people where the bad checks aren't covered by the overdraft protection. So when you're deciding whether you want overdraft protection or not, you should be told this because you might decide not to have it because you don't want the risk of having other people's bad checks covered by you. But the problem is, and it's one of the omissions in counsel's equation is, he doesn't go to the other side of the ledger. And there's a reason he doesn't. In other words, there are costs of overdraft protection. But there are costs of not having it. Okay. The other side of the ledger is what? The other side of the ledger is he would have had overdraft. There would have been an overdraft fee. Had he given a check to someone else, that check would have bounced. I think what he's saying is he would have held it. But that's an argument that he's wrong. And it's when he says it's misleading. And, you know, whether he's wrong about it, throughout this complaint, he can read you example after example where they say if he had had the information, then there wouldn't have been any problem. He would have had a choice. Paragraph 53, for example. But he had that choice anyway. Well, he may have had it. But that makes him wrong. It doesn't mean it's preempted. When he says this is all misleading and you say it's not misleading, that's an answer to his argument. It doesn't make it something that's preempted if his complaint is that the information he was given was misleading. And you keep saying it's not misleading. Well, let's face it, it's not misleading because he was told exactly when his funds were available. All right, that's an answer. He made the decision. And this should be dismissed on the pleadings, if that's right. And we're not going to decide that question. We're deciding preemption. It was briefed in the district court and it's briefed here as an alternative ground. And the district court didn't rule on that as an alternative ground. And we have the right, if we want, to reach that alternative ground or to send it to the district court to judge the pleadings. But none of that has anything to do with preemption. Well, what has to do with preemption is three things. One, this entire scenario is check, processing, deposit handling, which is within the scope of preemption, number one. Number two, it's funds availability. It's inescapable from these claims. And number three, he is, at the end of the day, seeking additional disclosures. He is saying there is more information I would have liked to know. And that allegation is preempted under the square authority of Rose and Martinez and several district court cases, including Montgomery, Weiss, and O'Donnell. When the allegation is there's more I would have liked to know, I would have liked to know that there was a certainty or a virtual certainty I'd have negative amortization. I would have liked to have known what the real cost of my loan closing fees were, not the markup. The allegation that I would have liked to know more, that is preempted by this regulation. So you're saying that, okay, the things that he wants, the ultimate remedies that he's seeking, would interfere with the bank's deposit-taking powers, and that's he can ask for it, but it's preempted. Correct. And asking for additional disclosures is preempted under the same regulation. It's two subsections down. I think it's B. It's the fourth subparagraph. And under the authority of Martinez and Rose, additional disclosures, using state law to require additional disclosures in this context is preempted. Well, what he's saying is without those disclosures, it's misleading. That had there been additional disclosures, it wouldn't be misleading. Now, some regulations cover both disclosure and advertising. This one doesn't. This one only covers disclosure. And you may have difficulty at times drawing the line between disclosure and advertising. But, you know, to say that the advertising is misleading without additional disclosures doesn't mean you're asking for additional disclosure. You've got to just get rid of the advertising. But that's not the allegation here. The allegation here is he wanted to know that it might have had an impact on his deposits. And my point is, A, that's a preempted claim, and, B, he didn't know. He had that piece of information because the general policy applies to ODP and non-ODP customers alike, and he knew when he left the branch that his funds would be available the next day. It was his decision, not the bank's, to withdraw his funds. There's no allegation he asked the bank when he withdrew them, by the way. Did he clear? Is it final? Is there a risk? He made the decision knowing it was two days later. He made the decision. When he alleges the bank caused him to have this loss, the bank didn't cause him to have that loss. He chose to withdraw the funds three days later. And he's had the use of those funds for three years. And that's all from the face of the complaint. So our point is that his claims are inextricably linked to deposit processing, disclosure, and funds availability, so they're expressly preempted by the regulation. And, B, there is no viable, on its face, misrepresentation claim, and there's no causation in any event because the cause of the problem here is his decision, knowing the funds were available, to withdraw them, not any decision by the bank. And, therefore, the complaint was properly dismissed. The Aguayo decision, yes, I would agree that had that decision been out, Judge Sabra's decision below probably wouldn't have cited it. I agree with that. But, otherwise, he went through the analysis, the preemption analysis mandated by Aguayo because he looked at the coverage clauses and found it was covered. And in the last paragraph of his decision, he looked at the issue of the alleged misrepresentation. So his decision is correct except for the citation to Silva's case, and that, obviously, in retrospect, after Aguayo. Thank you. Counsel, we're five minutes over. Thank you. Thank you very much. Just a few points, Your Honors. I think counsel's argument points out that there are a number of hotly contested facts which are not appropriate at this juncture. I note that counsel said, well, this is the ‑‑ he believes this is the practice of the industry. My understanding is that this is not the practice of the industry, and the complaint cites the practice of Citibank as being completely opposite. But I think that just underscores that where those facts should come out is not before Your Honors but before the district court either on a summary judgment motion or perhaps before a jury as the triers of fact. And I just need to correct the record on one point as well. How did the bank's advertising cause your client's injury? Because of the advertising, he entered into this program. He would not have ‑‑ he would not have entered into this program but for that misleading advertising. But the problem that the ‑‑ what caused the injury was he wrote checks on a check that was written to him and he deposited and he didn't wait until it actually cleared, right? No, it ‑‑ what happened was is that he wrote a check on what was shown to him to have cleared. And then the bank turned around and said it hasn't cleared. And as a result, he has had to pay $2,062 on a $4,700. Well, but some of it he just left it on his credit card. So he just let funds keep accruing, right? I mean, he could have a check that was written to him. So a check that was written to him that bounced, essentially, he could have taken funds from somewhere else, cleared that up, but he's left it on his credit card all this time, right? My understanding, and I believe this is an issue of fact that hasn't been fully fleshed out, but it's that he didn't have a choice. They were charging him 25 percent interest on this money that they took from his credit card. The damages relate to the credit card in that respect. There was also a $144 transfer fee, which was charged directly to his credit card. If he could have taken the money from some other place, he would have paid it off, but he didn't have the money to pay off the amount that was being charged. But that was all caused by the person that wrote him a bad check. No, that was caused because he was enrolled in this practice. The person who wrote him a bad check had nothing to do with charging him the $144. If the person had never written him a bad check, none of this would have ever occurred, correct? If he had not received a check at all, none of this would have occurred. That's correct. But because he was in this program and the events did occur as they did, Bank of America charged him $2,062. Now, if he hadn't been in the program, what would have happened to him is the check still would have been reversed and either his checks to other people that he wrote would have bounced or he would have had an overdraft caused by the $7,500 on his account, which the bank would have gone after for him, right? I believe it's an unexplored area of fact, but my understanding of the way the industry works is that he would have been charged a $35 fee for the overdrafted account. The result would have been, and there may have been some returns. But the bank doesn't just pay money to other people if you don't have money to cover it. Well, that's correct. And what would have happened is that if he had written a check, his check would have bounced. So the bank would not have paid money. The bank would not have covered this money. So the difference would have been $35, which the plaintiff would have incurred because of the overdraft, because no overdraft protection, as that term is coined by the defendant, versus the $2,062, which he has inferred as a result of this miscellaneous practice. I think it's worth pointing out one last fact, and that's the court did not apply the analysis that was done in Aguero. In fact, the court specifically said, once you determine that this area is covered, you do not have to go to the savings clause. And that's, I'm following, the court said, I'm following the logic of Silvis, which applies to the whole lot analysis. That was specifically rejected by this court in Aguero. And the court said, even if this is an area that's covered, then you have to go to the savings clause. Then you have to look at 12 CFR 7.4007, subsection C. And is this a law that applies to contract or torts? Is it a law of general applicability? And that is, in fact, what we have here. And that is, in fact, the district court cases such as Guterres, which this court relied upon in its Aguero decision, said those type of claims are not preempted. So I think the preemption analysis, in a nutshell, is very simple. Aguero is governing authority. The court did not follow that analysis. Following that analysis, there's no preemption in this matter. And everything else is a contested fact, which really should be determined by a trier of fact, either the district court on summary judgment or a jury at trial. Thank you, Kathy. Thank you. Thank you. The case is submitted. The next case is Hutchfall v. Wells Fargo Bank.
judges: Reinhardt, Wardlaw, Callahan